May it please the Court, under the law of this circuit, handed down by this panel in Cooey and Karapetian, this Court should grant Mr. Saleem's petition for review and remand the case for further proceedings and a consideration of the merits of his asylum application to the Immigration Courts. Mr. Saleem fled Somalia and timely applied for asylum in the United States in 2000. He properly submitted for fingerprints at that time. Despite his timely application, he has not been afforded the opportunity to present the merits of his asylum application to any court in this country. The immigration judge did not hear the merits of his asylum application and instead dismissed Mr. Saleem's application for the sole reason that the fingerprints he had on file had somehow expired. But no statute, rule, regulation, or anything else with the force of law provided that fingerprints expire. Nor did the immigration judge give Mr. Saleem notice of the fingerprinting requirement before invoking it against him. Rather than dismissing Mr. Saleem's case, the judge should have granted Mr. Saleem's testimony and evidence and to allow him the opportunity to present his fingerprints after the hearing. Ginsburg. Yeah. Was that tantamount to a request for a continuance as existed in the Cooey case? I think it's the functional equivalent. It was one of the two requests made by the Petitioner in Cooey. The Petitioner's counsel in Cooey made the request to either continue the hearing to a different day or to continue with the hearing and present fingerprints afterwards. Counsel here, Mr. Pike, made that second request, perhaps in part because the earlier portions of the transcript had been discussing the continuances that had already been granted in the case. So I think it is the functional equivalent of the Cooey, of the request for a continuance. Now, if we agree with you that what the I.J. did was an abuse of discretion, do we need to reach the voluntary departure issue or the ineffective assistance of counsel issue? No, I don't believe you need to reach any of those issues. I think the dispositive issue is whether the I.J. committed error by dismissing it solely for the reason of fingerprints. And if the I.J. abused its discretion by not granting the continuance, then I think that fully resolves Mr. Salin's petition. Anything else? I just wanted to state that Cooey controls the outcome of this case. And under the four factors in Cooey, all those factors are satisfied here, just as they were in Cooey and in Karapetian. If there are no further questions, Your Honors, I'd like to reserve the remaining of my time for rebuttal. And you're handling this matter as pro bono counsel. And you're with the Sidley Austin firm. Correct. All right. We appreciate your work and the support of your law firm. Thank you, Your Honor. We'll hear from the Department of Justice. Well, you have a tough road to hoe with that. Well, I suspected that I might, Your Honor. May it please the Court, Jonathan Robbins here on behalf of the Respondent Eric Holder. This case is distinguishable from the cases in Cooey and Karapetian because there was notice in this case. Now, it doesn't really logically follow to say that I went to go get my fingerprints renewed, but I didn't have notice that I needed to do it. And that's really what the difference is here. When you look at the case. Well, you had notice one day before the hearing, and I wasn't able to get it done in that short time frame. But that relates to the potential for ineffective assistance of counsel, which is a claim that isn't properly entertained by this Court yet. When you look at what happened in this case, this case had been pending for two years. The immigration judge had just granted a continuance to their side, and they come into the courtroom, and they say they don't have their fingerprints. And the immigration judge asks them, and he starts to inquire, you know, to see whether they had notice, and they claim. Kennedy, what continuance did the immigration judge, the two-year continuance? Well, that was the – that wasn't a continuance. That was the scheduling of the merits hearing. But also in addition to that, in February prior to the April merits hearing, they requested a continuance, which was granted. Is that the counsel requested a continuance? Yes. I mean, it wasn't the Petitioner. It wasn't the Petitioner himself.  I mean, he's represented by counsel.  But the counsel wanted it for his own reasons, not for reasons that would benefit the Petitioner. That's true. But again, that's why the immigration judge didn't stop there. During the hearing, when they said that they didn't have the fingerprints, the immigration judge made some inquiries. Let's go back to Fenneman's here. Where was there a requirement in law at the time, this is 2003, that he update his fingerprints? Well, that is notice that's supposed to be given to the Petitioner. And I would agree with you that notice would be – No, no. What law was in effect then that required the fingerprints, which you'd already given, to be updated? Well, the agency requires that fingerprints be expired. That's part of – that's not technically outlined in the regulation, but it is outlined in the regulation that you need to comply with their biometric requirements. No, no. That's the 2005 regulation. This was in 2003. Correct. So it wasn't in effect then. It wasn't spelled out anywhere. This Court has said that it's ambiguous as to what is needed to be done, although there's an argument there. Where would you look at the time this case came up? Where would a lawyer look to find that there's a fingerprint requirement? Well, once fingerprints – In the statute and the regulation. Well, according to the notice and comment, it's really supposed to be either the have to come and get your fingerprints done, and also the immigration judge is supposed to play a role and inform them. Oh, he did that. He had fingerprints. He had them done. Now, isn't it his fault that the merits hearing wasn't set for two years later? No, it's not. But, again, Your Honor, this goes to notice. And, of course, the problem is you can't set – No, it's the notice of what? He met the requirement of fingerprints. How would he know that the BIA wouldn't consider those fingerprints valid after 15 months? How would he know that? It wasn't written down anywhere. I agree with you that the notice requirements in this case would be problematic, except for the fact that he admitted that he knew when the immigration judge asked him. Remember, when they got there and he said he didn't have his renewed fingerprints, he didn't claim, I didn't have notice. When did he notice? Again, but that goes back to his potential for ineffective assistance of counsel. And, you know, suppose they gave you notice of something that wasn't really a legal requirement. What difference does that make? Well, the agency requires in its manual that you – Yeah, but the agency's manuals, it tells the agency the procedures the agency must follow. It does not have the force of law tell the petitioner, or the petitioner's attorney even, what procedures the attorney and the petitioner must follow. Well, what the regulation states is that one has to comply with the biometric requirements. Now, it naturally follows that you have to find out what those requirements are as part of the regulation in order to comply with them. Well, I think even your department – I'm not sure who at the time was doing this – But, again, notice isn't a problem if they concede that they were on notice. And, again, he went – he knew – he understood that he was under a legal obligation to get his fingerprints required. You can't know that you have to get your fingerprints required and then put your head in the sand and just say, oh, well, I wasn't given notice, if you knew that you had to go do it. And, again, whether or not he was – Well, he said he was told that he had to go do it. He said he was told that he had to go do it. He was told he learned about this on Friday before the Monday. That's true. Yes. That's certainly last-minute assistance of counsel. But whether or not it rises to ineffective assistance of counsel is something that needs to be pursued in a properly developed record before the agency. With respect to the ineffective assistance of counsel claim, it's not properly entertained by this Court at this time. They have the opportunity to file a motion to reopen in that regard. And certainly, you know, whether or not that rose to the level of ineffective assistance of counsel, which there seems to be a decent case that it might be. Let me ask you this. Can a disbarred lawyer – is a disbarred lawyer permitted to practice before the immigration court? Well, once a lawyer is either disbarred or prevented from arguing, for example, at a state bar or before this court, the Executive Office for Immigration Review, general counsel for them, is supposed to initiate proceedings which would essentially potentially result in their being decertified by the board as well. But that doesn't happen. Well, that's what they're supposed to do under the regulations. I don't know whether or not that's happening or not, if that's supposed to be happening. You mean this is an actual regulation that they actually don't follow? Well, I don't know whether they follow it or not. Again, I mean, that would be – The PIA doesn't have to follow actual regulations that a Petitioner has to comply with something that's not a regulation. I'm sorry. What? Can you clarify that? You have a regulation. You're supposed to do something. But you don't do that. But on the other hand, Petitioners must comply with a rule that isn't a regulation. Well, I mean, the attorney in this case wasn't disbarred, to my knowledge. So is it – I mean, unless I've misinformed, I don't believe Steve Peck has been disbarred. Well, you have to read our cases. Well, certainly I understand that you've had problems. And we have – remember, I called, and I think it's still the case, that I was told – and I think you're the first one from the Justice Department that has come up with this new information. But the view has been from the immigration people that a disbarred lawyer is better than no lawyer. And – Respectfully, Your Honor, I don't think that's been our position. What? Are you new? I'm trying to educate you. It's just – Well, I think what you're referring to is the notarios. Just listen to me. No, no. Notarios are all tied up with these folks. Right. Don't you know that? Yes. I understand that. But there's a difference between – And they're the ones that keep the clients, the people they take money from, the people who are in many cases defrauded from even speaking to one of these appearance lawyers. Well, I agree. Who have all these shields in front of them. Well, I certainly agree that – So, you know, in many ways the system is corrupt. Well, there's a – And in many ways the Justice Department is responsible for it because it condones all this. But things are changing. Respectfully. And you're getting a new person who is going to be the head of the immigration judges. Einhorn spent many years of his life as an IJ, lived in frustration, and issued some good opinions towards the end. And things are going to change. But right now the system's a disgrace. Well, respectfully, Your Honor, there's a difference between unlicensed attorneys that we're practicing versus disbarred attorneys that we're practicing. And I'm not talking about that and incompetent attorneys who are out there. I mean, we're injuring thousands and thousands of innocent people as we speak right now. Look – And we don't do anything about it. I think you have to learn to interrupt Judge Paris. I'm sorry. I'm trying to lead you on a righteous path. I see what you see, Your Honor. I looked at the record in this case. I'm not blind to what happened here. Okay. But if they want to pursue an ineffective assistance of counsel claim, and to my knowledge Mr. Peck has not been disbarred, they have an avenue of relief to pursue that. In this immigration, Judge, if you look this person up, you'll see that we've dealt with him. This isn't the first time he's behaved this way. He's just absolutely abused his discretion. He didn't give any concern at all to the applicant. And there was really no reason in the world if he needed another set of fingerprints why he couldn't have had the hearing and then the granting or the denial of relief could be held in abeyance while the fingerprints were taken. And, you know, you get a person from another country who has problems with the English language and you go down to the building downtown, huh? You go down there. You can go down there at 4 in the morning and wait and wait and wait. And then when you get to the person that's going to help you, they'll say, Oh, sorry, it's closing time. Come back tomorrow. So people are frustrated. They're not helped. And you can, I mean, this person says that I went down there and I looked for someone who could take my fingerprints. Now, maybe there was someone there, but maybe they didn't understand this Mr. Salim. And he went back twice, and there's no reason to doubt his credibility. The immigration judge didn't say he was incredible. The only thing I would say is I think it's been nine years. It's been a very long time. Yeah. What is the requirement now if we were to remand this on the fingerprints? Would he just go back and get more fingerprints and then he could have his merits hearing? Yes. I mean, if he sent it back, yes, he would have to comply with the renewed fingerprints, get a new background check, and presumably his case would be reopened to hear the asylum application and the withholding of cap-protected money. He's a great candidate for asylum. He's from Somalia. We have no idea about that at all. They were killing each other over there. Well, I mean, again, that's something that has to be pursued in a properly reopened claim. Yeah. There's a lot of tribal warfare. And he's got a good lawyer now. True. No doubt about that. But, again, you know, what is an abuse of discretion? The case has been pending for two years. It had already been granted a continuance. When the immigration judge asked them, they didn't say we didn't have notice. They said we went. But they gave essentially the legal equivalent of my dog ate my homework. It was an oversight. Now, I understand that Your Honors would most certainly exercise your discretion in a different way. But it's not an abuse of discretion just because an immigration judge decides to be more rigid and enforce the legal requirement that these biometric requirements be in place so that the DHS can properly run a criminal background check. Well, you don't need a fingerprint to run a criminal background check on that. Yes, you do. You do? Respectfully, yes. Again, this – I see that I'm actually over time. Do you want me to respond to that? Well, I'm abusing my discretion by talking to you. Well, with respect to the fingerprinting process, they've made the argument that fingerprints don't change. But it really – when you look at the fingerprinting requirements, fingerprints usually don't change. There's no question about that. But it's the fingerprinting technology that changes within the department. This is a system that – Is that why they have that 15-month – Is it still a 15-month rule? As far as I know, yes. Is that you're improving your ability? I mean, what is changing? Respectfully – well, it's the technology that's changing, first of all. How? Well, now they've been converting to live scan technology, so now fingerprints are done – they've changed the fingerprint cards from five fingerprints to 10 to 12. So, again – and, again, this really boils – it's not really appropriate for the court to judicially intervene and replace the agency's fingerprinting requirement with something that it feels is better. You didn't have a requirement to keep forgetting. There was no law requiring updating of the fingerprints. Well, again, it's part of the agency – it's part of the agency manual. I mean, I know the court has said it's ambiguous, but they seem to know that there was a requirement. There's no law requiring that to be done, which in an abusive discretion is something that's irrational or arbitrary. They didn't say to the immigration judge, look, we shouldn't have had to renew our fingerprints. I mean, that's something you have – if you want to say that it's arbitrary or rational or it's something – or it's not law, that's an argument you have to make. But if you're going to make the argument – Who's supposed to make that argument? Well, that would be his counsel to the immigration judge. The guy that just screwed everything up for them pretty good. And, again, that's part – So you want – so you're asking – let's just finish this because he's way over the top. So what you want us to do is to say this wasn't an abusive discretion that sent it back on ineffective assistance of counsel claim. Not send it back. They have an avenue of relief available to them to file a motion to reopen. And I know that Granados Oseguera was withdrawn, but even if you look at the rationale in that case, the court was very clear that even though in that case they had determined that ineffective assistance of counsel was something that they should send back because the attorney – Denying this petition for review, and then they would presumably file a motion to reopen with the agency based on ineffective assistance of counsel. They wouldn't be number barred because Mr. Peck hasn't wasted their one opportunity for a motion to reopen. And, you know, they would obviously argue equitable tolling because at the time they were represented by ineffective assistance of counsel. Then if the agency says – you know, denies that motion to reopen, says that equitable tolling isn't warranted or that it wasn't ineffective assistance of counsel, then they can petition for review for this Court. This Court will have jurisdiction to review that. And woe is the attorney that argues that case before this Court. Nine years from now, we'll have a merits hearing on this? I'm sorry, what? In nine years from now, we'll have the merits hearing. Well, just because – I mean, look, the court system takes time, but that doesn't mean that the rules of exhaustion should be thrown out the window. I mean, that's part of the court process. We need a fully developed record here. I mean, right now we don't even have so much as an affidavit by the petitioner claiming ineffective assistance of counsel. All we have is these statements made in an amicus brief. That's not – you know, they have to file a motion to reopen with a little zada requirements, and so that the agency can properly pursue whether this is ineffective assistance of counsel, and not merely last-minute effective assistance of counsel. That's not what we have. We have precedent. We have CUI. Yeah. We have precedent we have to follow. In those cases, they didn't have notice. Here, they went to go get their fingerprints. You can't say that you didn't have notice if you went to go comply with the requirement. Did you make that argument in your briefs? Well, CUI was published after, and both those cases were published after. And I thought your 28J letter was distinguished CUI on another ground, that identity was particularly important here. With – well, we certainly, in our first initial brief, stated that they had conceded that they knew of the requirement. In our response to the amicus – in both the amicus brief and our initial brief. Okay. Well, we'll have to consider how we – Well, this is what the lawyer conceived, right? But – And she – When the transcript for the immigration judge, I think he started out by saying, well, let me ask one. When did you give your client notice? Oh, it was a short time ago. And then it became the same page – well, it was Thursday. It was Thursday? Well, it could have been Thursday or Friday. So he was just covering his tracks. And, of course, the client was just told to go ahead and do this on Friday. We don't know what the explanation was and why does he have to do it and all that. And he did go down there. No one's challenging his credibility. Again, they have a pretty solid case for ineffective assistance of counsel. But that's just – all the government's asking is that it be properly pursued before the agency so that it can be fully developed. As far as – so I see I'm way over time here. Thank you very much for your time, Your Honor. I hope you had a good trip. I did. Thank you very much for your time, Your Honor. Okay. All right. Anything further? I just have two quick points to respond to some arguments raised by Mr. Robbins. The first is that notice is – adequate notice is what's important. And one day is not adequate notice. And also there are many situations where we require something other than just the subjective notice of the applicant or of the person. You can consider situations such as a plea colloquy where – Well, notice has to comply with the requirements of due process because the Fifth Amendment applies to immigration proceedings. So – and due process has a standard for notice. It has to be meaningful. Correct, Your Honor. And there's case law in that. Correct, Your Honor. And the other small point I wanted to make, although this Court need not reach the issue of ineffective assistance of counsel, it does have jurisdiction under the Hernandez case that was – that is still good law. If there are no further questions, I will conclude today. All right. And thank you, and thank you to your firm again for doing this pro bono. We appreciate it. Thank you. Have a good weekend. And the Court will now adjourn. Thank you.
judges: Pregerson, Archer , Wardlaw